**[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 164.]**

COLUMBUS BAR ASSOCIATION *v*. STERNER.

**[Cite as Columbus Bar Assn. v. Sterner, 1996-Ohio-324.]**

*Attorneys at law—Misconduct—Permanent disbarment—Misappropriating funds and neglecting to safeguard the interests of clients over a five-year period.*

(No. 96-436—Submitted September 24, 1996—Decided December 18, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-46.

————————————

{¶ 1} On September 6, 1995 the Columbus Bar Association ("relator") filed an amended complaint charging in eight counts that James M. Sterner of Columbus, Ohio, Attorney Registration No. 0034047 ("respondent"), violated various Disciplinary Rules of the Code of Professional Responsibility. Count One of the complaint concerned respondent's representation of Gregory M. Sabbato during 1991 in the purchase of a business. Respondent did not inform Sabbato that he not only had previous business dealings with the seller of the business but also had shared office space with and was otherwise affiliated with the seller's attorney. Following respondent's advice, Sabbato paid $70,000 to the seller, who was to pay off the liens on the business. The money, however, was used for other purposes, the liens were not paid off, and the creditors foreclosed on the business and took it from Sabbato. When Sabbato sued respondent for malpractice, respondent refused to notify or cooperate with his insurance carrier, and as a result Sabbato obtained a judgment against respondent for $208,000. Respondent then transferred assets out of his name to avoid attachment by Sabbato and other creditors.

{¶ 2} Count Two of the complaint was based on respondent's representation in 1993 of John Malhalic, who had agreed to sell a liquor license to John Scimone. As part of the transaction, respondent told Scimone that the license was free and

clear of liens and received $7,500 from Scimone to be held in escrow until the completion of the sale. Scimone later learned that there were tax liens against the license, that the license had been revoked, and that in a contemporaneous negotiation respondent had received funds from a third party who wished to purchase the same license. The license was never transferred to Scimone, and respondent both failed to return the escrow funds to Scimone and refused to account for them.

{¶ 3} Count Three involved respondent's receipt of $24,000 from Mary Lavelle in 1991 to be held by him as escrow agent and used for the payment of Ohio sales tax and for payments to the Ohio Bureau of Employment Services in connection with Lavelle's purchase of Norton Road Beverage, Inc., a company represented by respondent. The transfer of the Norton assets to Lavelle was delayed by respondent's failure to expeditiously perform his duties as escrow agent. Respondent settled Lavelle's suit against him for breach of his fiduciary duty for $3,000, but he has never accounted for the funds in the escrow account.

{¶ 4} As to Count Four, respondent represented the seller of a bar business, and received $10,000 from James Flax, a potential purchaser, to be held in escrow pending the transfer of the liquor permit. The permit was not transferred and Flax was entitled to the return of the escrow money on and after July 1, 1994. Despite requests from Flax, respondent did not return the escrow money until February 28, 1995, with no interest and no explanation for the delay.

{¶ 5} As to Count Five, Robert and Delores Ruzendall in 1991 and 1992 retained respondent to reinstate their liquor license and entrusted respondent with over $20,000 to pay delinquent taxes related to the license. Respondent told the Ruzendalls that he paid the funds for the intended purpose. However, the state of Ohio placed two tax liens totaling over $25,000 on the Ruzendalls' property. Respondent has refused to account for and document the disposition of the funds

entrusted to him, and partly as a result the Ruzendalls filed under Chapter 13 in the bankruptcy court.

{¶ 6} As to Count Six, respondent in 1991undertook to act as a fiduciary at the closing of a real estate sale by Deborah Shirey to Network, Inc. and received $10,000, which was to be paid by him to release federal and state tax liens on the property. As a result of respondent's failure to pay over the money, the federal government foreclosed on the property. Respondent has refused to account for the funds.

{¶ 7} Underlying Count Seven was respondent's representation in 1995 to Tony Canale that respondent could secure a liquor license for Canale's bar business upon payment of $6,000 in back taxes. Canale gave respondent a certified check in that amount payable to the state of Ohio. Respondent endorsed the check, "not used for purpose intended," signed Canale's name, cashed the check, and received the funds. Respondent did not pay the taxes and refused to account to Canale for the funds.

{¶ 8} Count Eight was added to the complaint because respondent failed to provide adequate responses and to cooperate with relator in its investigation when he was notified of the charges.

{¶ 9} Respondent failed to file an answer to the amended complaint and on December 13, 1995, relator moved for an entry of default. Respondent filed no response to the motion for default. Based upon the complaint, the default motion, and supporting affidavits and documentation, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") found that respondent had violated DR 1-102(A)(3) (engaging in conduct involving moral turpitude) with respect to Count Three; 1-102(A)(4)(engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) with respect to Counts One, Three, Five, Six, and Seven; 1-102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law) with respect to Counts One through Eight; 5-

101(A) (not refusing employment when the interest of the lawyer may impair independent professional judgment) with respect to Count One; 6-101(A)(3) (neglecting a legal matter entrusted) with respect to Counts Two, Four, Five, Six, and Seven; 7-101(A)(1) (failing to seek the lawful objectives of a client) with respect to Counts One, Five, Six, and Seven; 7-101(A)(2) (failing to carry out a contract of employment) with respect to Counts Five, Six, and Seven; 7-101(A)(3) (prejudicing or damaging a client during the course of representation) with respect to Counts One, Five, Six, and Seven; 9-102(B)(3) (failure to maintain records of client funds) with respect to Counts Five and Seven; and 9-102(B)(4) (failure to promptly pay over client funds) with respect to Counts Five, Six, and Seven.

{¶ 10} The panel recommended that the respondent be permanently disbarred because of the length, breadth and egregious nature of his conduct, his failure to participate in the disciplinary process, and the lack of any mitigating circumstances. The board adopted the panel's findings, and recommended permanent disbarment and that costs be taxed to respondent.

{¶ 11} Respondent filed objections to the board's findings, conclusions of law and recommendations, and requested oral argument before this court. In respondent's objections and in oral argument, counsel for respondent sought to introduce evidence that respondent's activities are explained by his psychological condition and that he had made restitution.

_____

*Bruce A. Campbell, James E. Davidson* and *Janice M. Bernard,* for relator.
*Charles W. Kettlewell,* for respondent.

_____

***Per Curiam.***

{¶ 12} The respondent misappropriated funds and neglected to safeguard the interests of his clients over a five-year period. The rules of our Code of Professional Responsibility are mandatory; they state the minimum level of conduct

below which no lawyer can fall without being subject to disciplinary action. As the board found, respondent's conduct clearly violated a number of these rules. We have said many times that the appropriate sanction for misappropriation of client funds and continued neglect of duty is disbarment. See*, e.g., Mahoning Cty. Bar Assn. v. Michaels* (1996), 75 Ohio St.3d 645, 647, 665 N.E.2d 676, 677; *Disciplinary Counsel v. Connaughton* (1996), 75 Ohio St.3d 644, 645, 665 N.E.2d 675, 676; *Lake Cty. Bar Assn. v. Ostrander* (1975), 41 Ohio St.2d 93, 70 O.O.2d 173, 322 N.E.2d 653. These previous disbarment cases involved one or two incidents over a limited time. Respondent's course of action involved a series of similar infractions extending over a five-year period.

{¶ 13} Respondent has attempted in his brief and in oral argument to introduce in mitigation evidence of his alleged attention deficit disorder, a psychological condition which respondent did not connect to his five-year pattern of neglect of duty. We decline to accept such evidence at this late date.

{¶ 14} Disciplinary matters are original actions. Rule V of the Rules for the Government of the Bar of Ohio, setting forth detailed procedures for such matters, is promulgated pursuant to our constitutional power to oversee all phases of the conduct of the bar. *S. High Dev., Ltd. v. Weiner, Lippe & Cromley, L.P.A.* (1983), 4 Ohio St.3d 1, 4, 4 OBR 1, 3-4, 445 N.E.2d 1106, 1109. Under Rule V, the time for the production of evidence is at the formal hearing before a panel appointed by the Secretary of the Board of Commissioners on Grievances and Discipline. After the board issues its findings and recommendations based on the certified report of the panel, this court issues an order to show cause to the respondent who then has the opportunity to object and to support that objection with a brief. Rule V has no provision for the introduction of evidence in the brief filed in this court or in the oral argument to this court. Only in the most exceptional circumstances would we accept additional evidence at that late stage of the proceedings.

**{¶ 15}** If respondent has any objection here, it  must be to the  findings and recommendations of the board.  The entire record sent to us from the board consists of  the pleadings, the default motion, the affidavits, and other material filed in support of the motion, and the findings of fact and recommendations of the board after respondent failed to answer, otherwise plead, or appear before the panel. Matters in excuse and mitigation do not appear in that record, nor do exceptional circumstances exist that would allow such evidence to be introduced for the first time by way of brief or oral argument in response to the order to show cause.

**{¶ 16}** Respondent is hereby disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and KLINE, JJ., concur.

DOUGLAS, J., not participating.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting for STRATTON, J.

_____