OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Cincinnati Bar Association v. Schultz et al.
[Cite as Cincinnati Bar Assn. v. Schultz (1994), Ohio St.3d.      .]
Attorneys at law -- Misconduct -- Two-year suspension with one year suspended on condition that attorney satisfactorily complete one year of supervised probation -- Charging an illegal or excessive fee -- Failure to return unearned fee -- Withdrawal from representation without taking reasonable steps to avoid foreseeable prejudice to client -- Attempting to limit liability to client for malpractice -- Representation of clients whose interests conflict -- Accepting compensation from source other than client.
(No. 94-1796 -- Submitted October 24, 1994 -- Decided December 30, 1994.)
On Certified Report by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-25.

In a complaint filed June 21, 1993, relator, Cincinnati Bar Association, charged respondents, D.C. Schultz Co., L.P.A. ("D.C. Schultz"), and its majority shareholder, Donna C. Schultz of Cincinnati, Ohio, Attorney Registration No. 0022091 ("Schultz"), with two counts of professional misconduct. Respondents answered, and the matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court on stipulated facts and exhibits and Schultz's affidavit.

The first count of the complaint alleged a variety of misconduct in D.C. Schultz's representation of six different clients from 1989 through 1992. The evidence established that three of these clients, Jennifer Nichols, Mary Ann Bill, and Dr. Roland V. Boike, were required by the firm's policy to sign contingent-fee agreements that provided for an hourly rate charge if the clients discharged the firm. The panel found that this arrangement was contrary to the shared risk of nonrecovery a contingent-fee agreement represents. Moreover, the hourly rate fee did not account for factors in DR 2-106(B)

that determine the reasonable value of a discharged, contingent-fee attorney's services and are the measure for such an attorney's recovery in quantum meruit. See Fox & Associates Co., L.P.A. v. Purdon (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, syllabus. The panel concluded that this practice violated DR 2-106(A) (charging an illegal or excessive fee).

Also pursuant to its policy, D.C. Schultz charged the other three clients, Diana Lawson, Jennifer Werner, and Cindy Lynn Allen, nonrefundable retainer/engagement fees in the amounts of $500, $530, and $850, respectively. According to the agreements they signed, these amounts were to be credited toward future charges, but were also considered "earned upon receipt." The panel determined that this practice enabled D.C. Schultz to retain fees for which the client received no benefit. Lawson and Allen were further required to sign undated entries consenting to D.C. Schultz's withdrawal, which the firm's support staff used as leverage when Lawson and Allen did not promptly pay charges above the retainer/engagement fee amounts. The panel concluded that these two aspects of D.C. Schultz's policy violated DR 2-106(A) and 2-110(A)(3) (failure to return unearned fee). Moreover, because D.C. Schultz either used or attempted to use the nonconcomitant consent forms to withdraw its representation when Lawson and Allen did not rectify their delinquency, the panel found the firm in violation of DR 2-110(A)(2) (withdrawal from representation without taking reasonable steps to avoid forseeable prejudice to client).

The evidence further established that D.C. Schultz committed misconduct when Allen decided to change attorneys. Allen requested release of her file to an attorney who had been assigned her case while he was employed by D.C. Schultz and who had later left the firm. Schultz personally instructed employees of D.C. Schultz not to forward the file until Allen signed a confidential release of all claims against the firm. The panel found that this instruction violated DR 6-102(A) (attempting to limit liability to client for malpractice).

Finally, the evidence in support of Count I established that, per D.C. Schultz policy, the Nichols and Bill contingent-fee agreements authorized the firm to pay subrogation claims from any settlement or judgment obtained on the clients' behalf and to receive a fee from the subrogee for this service. D.C. Schultz did not act on this provision in either contract, but the arrangement necessarily promised to reduce the clients' shares of any proceeds. Accordingly, the panel found violations of DR 5-105(A) and (C) (representation of clients whose interests conflict) and 5-1-7(A)(1) (accepting compensation from source other than client).

Count II of the complaint charged, in essence, that Schultz should be held professionally responsible for the misconduct committed by attorneys employed by D.C. Schultz. The panel agreed based on Disciplinary Counsel v. Ball (1993), 67 Ohio St.3d 401, 618 N.E.2d 159, in which disciplinary measures were imposed due to a lawyer's careless delegation of administrative probate matters to an untrustworthy employee.

Before recommending a sanction for the identified misconduct, the panel considered that Schultz had moved out-of-state, that she was no longer practicing law, and that

D.C. Schultz had ceased practicing law, referred its clients, and sold its other assets. The panel then rejected the recommendation jointly submitted by the parties, which included a one-year suspension from the practice of law, to be followed by a one-year supervised probation period if Schultz were subsequently readmitted to the Ohio Bar. The panel modified this suggestion and recommended that Schultz be suspended from the practice of law for two years, with the second year of this period to be suspended on the condition that she serve one-year under supervised probation. The panel further recommended that the supervised probation period focus on the appropriate delegation of duties to support staff, as well as proper billing practices, fee agreements, and release of client files upon dismissal. The board adopted the panel's findings and its recommendation.

Gates T. Richards, Thomas M. Tepe, Naomi Dallob and E. Hanlin Bavely, for relator.
Santen & Hughes and William E. Santen; Helmer, Lugbill, Martins & Neff and James B. Helmer, Jr., for respondents.

Per Curiam. We have reviewed the record submitted by the parties and concur in the board's findings of misconduct and recommended sanction. Our decision to hold the majority shareholder of a legal professional association vicariously responsible for the disciplinary offenses of attorneys employed by the association is specifically authorized by Gov.Bar.R. III(3)(C), which states:

"A breach of * * * [any duty imposed by the Supreme Court Rules for the Government of the Bar or the Code of Professional Responsibility] on the part of the [legal professional] association shall be considered a breach upon the part of the individual participating in the breach and the shareholder, director, and officer having knowledge of the breach."

The misconduct committed in this case resulted either from policies imposed by D.C. Schultz's majority shareholder or from her specific instruction. Donna C. Schultz is therefore suspended from the practice of law in Ohio for two years; however, one year of that period is suspended on the condition that she satisfactorily complete one year of supervised probation in accordance with the guidelines stated by the panel's report. Costs taxed to respondent Schultz.

Judgment accordingly.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

1 DR 2-106(B) states:

"A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The liklihood, if apparent to the client, that acceptance of the particular employment will preclude other

employment by the lawyer.

"(3)  The fee customarily charged in the locality for similar legal services.

"(4)  The amount involved and the results obtained.

"(5)  The time limitations imposed by the client or by the circumstances.

"(6)  The nature and length of the professional relationship with the client.

"(7)  The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8)  Whether the fee is fixed or contingent."